UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW FERNANDES,<br><br>            Plaintiff,<br><br>    v.<br><br>TW TELECOM HOLDINGS INC.,<br><br>            Defendant. | No. 2:13-CV-02221-GEB-CKD<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

        Defendant tw telecom ("Defendant") seeks summary judgment on Plaintiff's California retaliation claim alleged under Labor Code § 6310, and Plaintiff's California wrongful termination claim alleged under California public policy ("wrongful termination claim"). Defendant also seeks in the alternative summary adjudication of issues. Further, Defendant seeks summary judgment on what it contends are claims alleged under California Labor Code sections 6403 and 6404; however, Plaintiff responds that he has not alleged a claim under either section. Therefore, Defendant has not shown that this portion of its motion presents a controversy requiring judicial decision.

1

# I. FACTUAL BACKGROUND[1]

Plaintiff alleges in his Complaint that Defendant wrongfully retaliated against him as a result of safety complaints he made to his superiors. Plaintiff asserts the following adverse retaliatory actions were taken against him because of those complaints: (1) he was removed from a bonus program; (2) his motor vehicle records were requested; (3) his merit based salary increases were discontinued; (4) he was not allowed to attend training programs; (5) he was verbally disciplined; (6) his "master key" was taken from him; (7) his employment was terminated; and (8) Defendant refused to re-hire him after his termination.

Defendant hired Plaintiff in October 2009 to work as a Network Technician on the Western Regional Long Haul Network. (Decl. Kevin O'Connor ISO Def.'s Mot. Summ. J. ("O'Connor Decl.") ¶ 6, ECF No. 23-5.) His position involved traveling to "regeneration sites," which house equipment that Defendant uses to amplify signals traveling through fiber optic cables. (O'Connor Decl. ¶¶ 5, 7.) Plaintiff and four other employees were supervised by Operations Manager Dave Shelton. (O'Connor Decl. ¶ 6.)

# II. LEGAL STANDARD

> A party is entitled to summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." . . . The moving party has the burden of establishing the absence of a

---

[1] Defendant asserts hearsay objections to portions of Plaintiff's deposition testimony on which Plaintiff relies in opposition to the motion; however, these objections need not be decided because the referenced testimony does not concern a matter germane to this order.

2

genuine dispute of material fact. City of Pomona v. SQM N. Am. Corp., 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "A fact is 'material' when, under the governing substantive law, it could affect the outcome of the case." Thrifty Oil Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

Summary judgment "evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party." Sec. & Exch. Comm'n v. Todd, 642 F.3d 1207, 1215 (9th Cir. 2011) (citing Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227 (9th Cir. 2001)).

> However, if the nonmovant does not "specifically . . . [controvert duly supported] facts identified in the [movant's] statement of undisputed facts," the nonmovant "is deemed to have admitted the validity of the facts contained in the [movant's] statement." Beard v. Banks, 548 U.S. 521, 527 (2006). A district court has "no independent duty 'to scour the record in search of a

3

genuine issue of triable fact.'" Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010) (quoting Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996)).

### III. DISCUSSION

Defendant argues its motion should be granted because it had a legitimate non-retaliatory reason for each adverse action that Plaintiff asserts it took against him.

"When a plaintiff alleges retaliatory employment termination . . . , and the defendant seeks summary judgment, California follows the burden shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)." Loggins v. Kaiser Permanente Intern., 151 Cal. App. 4th 1102, 1108-09 (2007). Under this burden shifting construct, Plaintiff has the initial burden of establishing a prima facie case of retaliation or wrongful termination, and if successful, the burden shifts to Defendant, "to offer a legitimate, nonretaliatory reason for the adverse employment action. If [Defendant] produces a legitimate reason for the adverse employment action, . . . the burden shifts back to [Plaintiff] to prove intentional retaliation." Yanowitz v. L'Oreal USA, Inc., 36 Cal. 4th 1028, 1042 (2005) (citations omitted, emphasis added).

> [If Defendant demonstrates a legitimate nonretaliatory reason for its conduct, Plaintiff] must "offer substantial evidence that [Defendant's] stated nondiscriminatory reason for the adverse action was untrue or pretextual, or [alternatively, Plaintiff can defeat Defendant's motion by identifying facts showing Defendant] . . . acted with a discriminatory animus . . . such that a reasonable trier of fact could conclude that [Defendant] engaged in [retaliatory action or

4

wrongful termination]."

Doubt v. NCR Corp., at *5 (N.D. Cal. Aug. 7, 2014) (emphasis added) (quoting Reeves v. MT Transp. Inc., 186 Cal. App. 4th 666, 673 (2010)). "An employee in this situation can not simply show that the employer's decision was wrong, mistaken, or unwise. Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder would rationally find them unworthy of credence . . . and hence infer that the employer did not act for the . . . non-[retailiatory] reasons." Dep't of Fair Emp't & Hous. v. Lucent Tech., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (quoting Morgan v. Regents of the Univ. of Cal., 88 Cal. App. 4th 52, 75 (2000)) (first and second alterations in original).

> When an employer moves for summary judgment, however, "the burden is reversed . . . because the defendant who seeks summary judgment bears the initial burden. Thus, [t]o prevail on summary judgment, [the employer is] required to show either that (1) [the] plaintiff could not establish one of the elements of the [prima facie] . . . claim or (2) there was a legitimate nondiscriminatory reason for its decision . . . . If the employer meets its burden, the discharged employee must demonstrate either that the defendant's showing was in fact insufficient or . . . that there was a triable issue of fact material to the defendant's showing."

Lawler v. Montblanc N. Am., LLC, 704 F.3d 1235, 1242 (9th Cir. 2012) (quoting Dep't of Fair Emp't & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745-46 (9th Cir. 2011)).

Defendant states in its motion that it assumes Plaintiff could prove a prima facie case of retaliation and

5

wrongful termination, and that it therefore premises its motion on what it asserts are the legitimate non-retaliatory reasons for the employment actions about which Plaintiff complains.

### A. Plaintiff's assertion that he was wrongfully removed from a Bonus Program

Defendant argues it should be granted summary adjudication on Plaintiff's assertion that he was removed from a bonus program in retaliation for his safety complaints, contending Plaintiff was mistakenly enrolled in the wrong program. (Def. Mem. P. & A. ISO Mot. Summ. J. ("Mot.") 15:3-17, ECF No. 23-1.) Defendant supports this position with portions of the declaration of Marianne Stauber, who worked for Defendant as a Commission Analyst. Stauber declares that Plaintiff had been initially "assigned to the wrong Bonus Program . . . . for unknown reasons," and when this "mis-assign[ment] was realized in June 2012, the error was corrected by reassigning Plaintiff to the correct bonus program. (Decl. Marianne Stauber ISO Def.'s Mot. Summ. J. ("Stauber Decl.") ¶¶ 5-6, ECF No. 23-6.)

Plaintiff argues this explanation is pretext for retaliation since Defendant's "company policy was to inform employees of [changes to their bonus program] annually; yet no one 'caught' [the] error [concerning Plaintiff's bonus program] until after Plaintiff made his safety reports." (Pl. Opp'n 10:15-17.) In support of his position, Plaintiff cites portions of his deposition testimony that state "[e]very year, [the Defendant] would send out a new [bonus] package that every employee . . . would have to sign." (Decl. Robert L. Boucher ISO Pl's Opp'n Def.'s Mot. Summ. J. ("Boucher Decl.") Ex. B, ("Fernandes Dep.

6

Tr.") 39:13-17, ECF No. 27-5).

It is uncontroverted[2] that by the time Plaintiff's bonus program was reassigned in 2012 he had already reported safety issues. (Def. Resp. Pl.'s Add'l Statement of Undisp. Facts ("Pl. SUF") ¶ 1, ECF No. 28-2.) However, "temporal proximity, by itself . . . does not create a triable fact as to pretext." Arteaga v. Brink's, Inc., 163 Cal. App. 4th 327, 334 (2008). Therefore, this portion of Defendant's motion is granted.

**B.   Requesting Plaintiff's Motor Vehicle Records**

Defendant argues its motion should be granted on Plaintiff's assertion that its request for access to his motor vehicle records were retaliatory, since the requests were made according to company policy. (Mot. 15-16.)

The following uncontroverted facts concern this issue. Defendant operated a driver-safety program and, as part of the program, its insurance broker sends the company an annual list of employees from whom it recommends Defendant obtain motor vehicle records to ensure that its employees' records do not contain violations that disqualify them from driving on the job. (SUF ¶¶ 8-10.) Based on the list, Steve Frenette, who worked in

---

[2] The word "uncontroverted" refers to facts that are either admitted or are "deemed" uncontroverted since they have not been controverted with specific facts as requires by Local Rule 260, which states:

> Any party opposing a motion for summary judgment or summary adjudication [must] reproduce the itemized facts in the [moving party's] Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial.

7

Defendant's Risk Management Department, "classif[ies] the identified employees into one of three categories: (1) 'unacceptable,' (2) 'borderline,' and (3) 'more information needed.'" Plaintiff's name appeared on the insurance broker's list in 2010 and 2011. (SUF ¶¶ 11, 13, 19.) On both occasions, Plaintiff was classified as "borderline" and Frenette requested either a copy of or access to Plaintiff's motor vehicle records. (SUF ¶¶ 14-15, 19-20.) On both occasions, Plaintiff's records did not contain any violation that disqualified him from driving on the job. (SUF ¶¶ 17-8 23.)

Plaintiff responds that the request for his records "was different" from requests Defendant made to other employees; however, he does not support this conclusory assertion. (Mem. P. & A. ISO Pl.'s Opp'n Def.'s Mot. Summ. J. ("Opp'n") 8:23-25, ECF No. 27.)

Defendant has shown a legitimate nondiscriminatory reason for requesting Plaintiff's motor vehicle records and Plaintiff has not identified evidence that this reason was pretext for retaliation. Therefore, this portion of Defendant's s motion is granted.

    **C.   Excluding Plaintiff from Merit-Based Salary Increases**

Defendant argues its motion should be granted on Plaintiff's assertion that Defendant discontinued his merit-based pay increases in retaliation for his safety complaints and supports its position with the following uncontroverted facts: Defendant used a computer program to determine the merit-based salary increases for its employees, and Plaintiff received a merit-based pay increase within the range calculated by the

8

computer program for each year he worked for Defendant. (SUF ¶¶ 28-30.)

Plaintiff does not respond to this portion of the motion. Therefore, this portion of Defendant's motion is granted.

**D.   Refusing to Send Plaintiff to Training**

Defendant argues its motion should be granted on Plaintiff's assertion that it refused to send him to Infinera training in retaliation for his safety complaints, asserting this training was not a requirement for Plaintiff's position. It is uncontroverted that Plaintiff's responsibilities as a Network Technician did not require Infinera training. (SUF ¶ 32.)

Plaintiff argues this explanation is pretext for retaliation and supports his position with his deposition testimony, where he testified that when he was hired in October 2009, Dave Shelton told him he would be able to take a certification program at the Infinera School, that he was ultimately not able to attend the training, and that he was the only Network Technician on the Western Regional Long Haul Route who did not attend the training. (Fernandes Dep. Tr. 185:15-186:1.) Plaintiff also supports his position by citing to deposition testimony from Defendant's Operations Manager named O'Connor who testified that Plaintiff's co-workers who attended the training did not report the same type of safety concerns that Plaintiff reported. (O'Connor Dep. Tr. 13:3-7 (referring to Mike Hoppe); 113:20-25 (referring to Chris Cogill); 153:12-20 (referring to a document indicating Jack Blair found "no critical issues").

Plaintiff has shown that his co-workers were permitted

to attend Infinera training, but Plaintiff's evidence does not "demonstrate [a] weaknesses . . . in [Defendant's] proffered legitimate reason[] for its actions that [could be the basis for] a reasonable factfinder [to] rationally find [it] unworthy of credence," in light of the uncontroverted fact that Infinera training was not necessary for Plaintiff's job responsibilities. Lucent Tech., Inc., 642 F.3d at 746.

Since Plaintiff failed to identify substantial evidence showing Defendant's stated reason for refusing to send him to Infinera training was pretext for retaliation, this portion of Defendant's motion is granted.

### E. Verbally Disciplining Plaintiff for Reporting Safety Concerns

Defendant argues its motion should be granted on Plaintiff's assertion that his supervisor retaliated against him by verbally disciplining him for speaking to a third-party vendor about safety issues, since "it was within [his supervisor's] managerial discretion to instruct [Plaintiff] to work through [safety] issue[s] with [him] rather than [a third party]." (Mot. 17:26-18:2.) Defendant supports its position with a portion of the declaration of its Senior Operations Director, who declares that Plaintiff was supposed to "report[] . . . issues up the chain of command" within the company. (O'Connor Decl. ¶¶ 7, 9.)

Plaintiff did not respond to this evidence. Therefore, this portion of Defendant's motion is granted.

### F. Taking Plaintiff's "Master Key"

Defendant argues it is entitled to summary adjudication on Plaintiff's assertion that his master key, which opened all

rooms at each regeneration site, was taken from him in retaliation for his safety complaints, since the key was taken by another employee who needed to use it. (Mot. 18:5-10; O'Connor Decl. ¶¶ 16-18.) Defendant supports its position citing portions of the declaration of O'Connor, where O'Connor declares that in April 2011, he received additional job responsibilities, including "management of the Western Regional Long Haul Network" but that at the time, he "did not have a key that enabled . . . access" to sites along the Western Regional Long Haul Network north of Sacramento," so he asked Plaintiff's supervisor "to obtain [Plaintiff's] 'master key' so that [he] could make a copy and use it on [his] visits to the regeneration sites along the Western Regional Long Haul Network north of Sacramento." (O'Connor Decl. ¶¶ 8, 17-18.)

Plaintiff responds that O'Connor's statements are pretext for retaliation since O'Connor did not actually inspect the regeneration sites "until about one year [after Plaintiff's master key was taken and] well after Plaintiff was terminated." (Opp'n 19:20-22.) However, this argument is conclusory since the testimony Plaintiff cites does not evince that O'Connor failed to perform a site inspection until one year after Plaintiff turned in his master key. Therefore, this portion of Defendant's motion is granted.

### G. Terminating Plaintiff's Employment

Defendant argues its motion should be granted on Plaintiff's assertion that his termination was retaliatory, since Plaintiff was terminated as part of a larger decision to restructure the Long Haul Team and his position was outsourced in

11

an effort to reduce costs.

Plaintiff responds that this stated reason for his termination is a pretextual mask that conceals the retaliatory reason for his termination since his "job was not [outsourced]..., but given to [another employee named] Jack Blair," with whom Plaintiff previously worked on the Western Regional Long Haul Network. (Opp'n 11:9-15.) Plaintiff supports his position with portions of the declaration of Defendant's Senior Operations Director for the Western Regional Long Haul Network, who declares that "[f]rom the fall of 2009 through approximately mid-August 2012, [Defendant] employed [four employees] . . . <u>to oversee the Western Regional Long Haul Network</u>," including Jack Blair, and Plaintiff, (O'Connor Decl. ¶ 6); Plaintiff also argues it is uncontroverted that in August 2012, Defendant terminated all employees in Plaintiff's position except Jack Blair. (SUF ¶¶ 45-46.) Plaintiff further argues that the decision was retaliatory since Plaintiff and Blair worked on the same routes, and Plaintiff reported several violations while Blair reported none. (Opp'n 20:20-23.) Plaintiff cites to portions of O'Connor's deposition testimony in support of this position; O'Connor testified that Plaintiff and Blair both worked at the Klamath Falls regeneration site and Blair "found no critical issues" at the site a few months before Plaintiff reported "batteries that were failing . . . Marviar units that require[d] cleaning and changing of filters . . . [and] fire extinguishers that require[d] recharge." (O'Connor Dep. Tr. 153:17-154:10.)

Defendant replies that Blair was "retained to fill the

position of <u>Network Specialist</u>" after the reorganization "[b]ased on his experience and qualifications," (Mot. 18:25-26), and that Plaintiff's deposition testimony reveals that he acknowledged Blair's qualifications for the position. (Def. Reply SIO Mot. Summ. J. ("Reply") 16:17-20; 16:24-17:1, ECF No. 28) (emphasis added.) Defendant supports its position by citing to portions of Plaintiff's deposition testimony, in which Plaintiff testifies Blair "was better than all of us [at computer stuff] . . . [and] had the most seniority and the training on [the relevant platform.]" (Pl. Dep. Tr. 60:9-12.)

Plaintiff's statement that Blair had not reported any critical safety issues at the Klamath Falls regeneration site several months before Plaintiff reported issues is not substantial evidence that Plaintiff's termination was pretext for retaliation since Plaintiff offers no evidence from which the reasonable inference can be drawn that the safety issues he identified—expired batteries and fire extinguishers and filters that needed to be changed—would be considered "critical" or that they existed when Blair inspected the site months earlier. Further, Plaintiff presented no evidence that he should have been retained instead of Bair to fill the role of Network Specialist, especially in light of Plaintiff's own testimony acknowledging Blair's experience and skill.

Therefore, this portion of Defendant's motion is granted.

**H. Refusing to Re-Hire Plaintiff After Termination**

Defendant argues it is entitled to summary adjudication on Plaintiff's assertion that it refused to rehire him in

13

retaliation for his safety complaints, asserting Plaintiff was considered for each position to which he applied, but in each instance "a more qualified candidate was selected." (Mot. 19:15-16.)

Plaintiff counters that his personnel "file now contains the no-rehire 'termination checklist,'" conveying he is not eligible for re-hire because of unprofessional conduct. (Opp'n 12:17-18; see also Pl. SUF ¶ 32.)

Defendant replies that there is no evidence this termination checklist impacted his job applications since of the three jobs for which Plaintiff interviewed, "two of the . . . hiring managers made their decision before" the termination checklist was placed in Plaintiff's file, and the third hiring manager "testified that he had no knowledge . . . [Plaintiff] was ineligible for re-hire." (Reply 21:16-23, ECF No. 28.) In support of its position, Defendant cites to the declaration of its Senior Recruiter and Talent Acquisitions Operations Manager named David Schow who declares that Plaintiff had three interviews and that in each instance he was not ultimately offered the job, but "was marked . . . as being 'consider for future,' meaning that there was nothing—other than a more qualified candidate—that prevented [Plaintiff] from being selected." Decl. David Schow ISO Def.'s Mot. Summ. J. ("Schow Decl.") ¶¶ 11, 15, 19, ECF No. 23-3.) Schow also declares that on August 20, 2010, two of the hiring managers with whom Plaintiff interviewed "requested approval to hire [another applicant] for the position," and on October 1, 2010, the third "requested approval to hire [another applicant] for the position." (Schow Decl. ¶¶ 10, 14, 18.)

The "termination checklist" in Plaintiff's file is dated August 22, 2012, evincing that it was not in his file when on August 20, 2012 two of the three managers decided to hire a different applicant and therefore could not have impacted their decisions. (Burt Decl. ¶ 5 Ex. D ("Termination Checklist"), ECF No. 23-8.) Further, the third manager declares that at the time he requested permission to hire a different applicant, he "had no knowledge that [Plaintiff] was ineligible for re-hire with [Defendant]." (Decl. Robert Steckler ISO Def.'s Mot. Summ. J. ("Steckler Decl.") ¶ 10, ECF No. 23-7.)

Defendant presented a legitimate non-retaliatory reason for declining to re-hire Plaintiff, and Plaintiff has not presented evidence showing that the termination checklist in his file actually influenced any of the hiring managers. Therefore, this portion of Defendant's motion is granted.

### IV. CONCLUSION

For the stated reasons, Defendant's summary judgment motion is GRANTED and this action shall be closed.

Dated: May 22, 2015

_____
GARLAND E. BURRELL, JR.
Senior United States District Judge

15